## NELSON v STATE

Ohio Appeals, 3rd Dist, Crawford Co.
No 1256. Decided Feb 7, 1931.

Charles F. Schaber, Bucyrus, for Nelson.
J. D. Sears, Bucyrus, for State.

CROW, J.

It would be an almost boundless task to enumerate, analyze, discuss and decide the very many matters argued in the briefs of plaintiffs in error, touching the trial court's decisions on the various motions, pleas, objections to the introduction of evidence, and so forth, and we will not attempt to do so, inasmuch as almost all, if not all, the questions have been already decided by reported cases readily accessible to all courts and lawyers.

The trial required many days, and whilst as is usual in lengthy trials, some mistakes were made in deciding the vast multitude of points raised in behalf of the defendants, as well as those raised by counsel for the state, we find no decision or order to have been of prejudice to any substantial right of either of the plaintiffs in error, excepting the disposition made of the claim for immunity which will be hereinafter again referred to.

Defendants were proved to have been precinct judges of election as set forth in the indictment, and that numerous ballots were changed after having been deposited by the electors who voted them, such changes consisting of the marking of an additional name or additional names for the offices of mayor and clerk.

The evidence of a very large number of such changes was the testimony of the voters who marked and thereafter delivered the ballots for deposit in the containers provided for receiving the same.

There was evidence also tending to prove that two other judges and the two clerks of the election in the precinct, were present with defendants at the election, and that nothing unusual occurred during the progress of the election until after the polls had closed and the time had arrived for taking the ballots from the containers, for counting, tallying, sealing and certifying.

All the testimony concerning these matters was given by election officers themselves, they being the only persons present at any time in the room where the election was held.

The testimony tended to show that the changed ballots were, after taken out of the container in which they had been deposited from the hands of the voters, and before the counting of them had been commenced, in the immediate possession of Mrs. Nelson, and she and all the other five election officers, were either standing or sitting near or at a table which had been formed by setting a number of tables together, and that each judge and clerk was in a position or situation where she (all six of the judges and clerks being women) could have seen all that occurred, on or at the table; the testimony of some of the election officers also tended to show that Mrs. Blake, who is a sister of Mrs. Nelson, sat at the side of Mrs. Nelson, at a time when, according to the testimony of one of the election officers, Mrs. Nelson had in her hand a pencil and was doing something with it, apparently either marking on or near the ballots or on or near a placard which a short time before, had been removed by defendant Mrs. Blake, from a window in the room, and placed by her on the table, at the side of Mrs. Nelson.

The evidence in its entirety, was fully ample, to show that the offense charged was committed in the manner and form charged by the indictment, and also that Mrs. Nelson had ample opportunity and facility for the physical commission of the offense; also that defendant Mrs. Blake witnessed such opportunity and facility, and did nothing to prevent Mrs. Nelson from availing herself of the opportunity and of using the facility; and also, that every one of the other four election officers, the other two judges, and the two clerks, so conducted themselves as to afford Mrs. Nelson the opportunity and the use of the facility she had, and that by the exercise of the care and vigilance those four, and Mrs. Blake, should have exercised under their oaths of office as election officers, Mrs. Nelson could not have availed herself of the opportunity, and use the facility mentioned.

Therefore the crime which was undoubtedly committed, and which cannot be too strongly condemned, occurred in surroundings and in a situation in which each and every one of the six election officers, all of whom were present at all times after the ballots were taken from the containers un-

til they had been counted, and otherwise treated as the law required, were equally guilty, and unquestionably deserved the punishment named in the statute which they all violated.

It was as much the official duty of each of the six election officers to not permit any one of their number, or any other person, to change a ballot, as it was to not commit the act herself. And when a jury has found a verdict of guilty, upon evidence of such facts and circumstances as were shown to exist at the election where this heinous crime was committed, and none of the election officers was incapacitated to see and hear all that was going on in the room where the election was held, and all were present at the time and the only time when the ballots could have been changed, it will not do to say that any of them could have been more guilty than were all the others.

What we have just said especially disposes of the contention of plaintiffs in error that the verdict of guilt was not sustained by sufficient evidence. The only ground for criticism of the verdict, is that it did not embrace the other four election officers in addition to the two who are here complaining.

After the verdict, and within the time prescribed by law, defendants filed a motion for a new trial, setting forth every imaginable ground for such a motion, and also alleging that defendants were entitled to be released because they had testified at an investigation before the county Board of Deputy State Supervisors of Elections, concerning the changing of the ballots, and had also testified on the same subject, as witnesses before the grand jury which found the indictment upon which they were tried.

Defendants also filed a motion in arrest of judgment, and a plea in bar, setting forth the facts that they had testified before the two tribunals, and praying that they be discharged as having been immuned from prosecution under **13340 GC**, which then existed in the following form.

"Witness testifying exempt,—In a proceeding or prosecution brought under the laws relating to primary elections, if a person is called to testify, he shall be required to testify to all facts of which he has knowledge, and the fact that he has so testified shall forever be a bar to a prosecution brought against him for violating such laws as to such matters to which he may have testified."

The motion for new trial, the motion in arrest of judgment and the plea in discharge were submitted together and decided against defendants.

At the submission it was stipulated as a fact, that defendants were called to testify as we have hereinbefore stated, and that they did then and there testify, but it was not stipulated that their testimony was not voluntarily given. It is asserted in behalf of the state that the testimony may have been voluntarily given, and if such was the fact, defendants were not within the terms of the statute.

It is quite enough to say in answer to that contention, that the statute contains no word indicative of a purpose to discriminate between persons who may testify voluntarily, and those whose testimony would be involuntary. The plain provision is that one who is called to testify in a proceeding or prosecution (and surely no one would claim that a grand jury investigation which resulted in an indictment was not within the words of the statute), shall give evidence of all facts of which he has knowledge, and that thereafter he cannot be prosecuted as to a subject concerning which he testified. The simple fact that he so testified shall forever bar a prosecution therefor.

The wisdom or want of wisdom of such a law, was solely for the legislature which enacted it, and its continuance in effect rests on the will of the voters.

The sole duty of the courts is to construe and apply the law as it exists.

At what stage of the trial may a defendant have the benefit of the immunity afforded by the statute?

Looking at the procedural steps provided by the statutes existing when the case was tried, it will be found that none of the three methods mentioned in **13439-5 GC**, styled "Exceptions to indictment", motion to quash, plea in abatement or demurrer names as a ground, the immunity conferred by **13340 GC**. Nor is such a ground prescribed as a subject of one of the five pleas on arraignment, enumerated in **13440-2 GC**, unless involved in the plea of not guilty. And the same is true of a motion for new trial under **13449-1 GC**, and of a motion in arrest of judgment under **13450-1 GC**.

The testimony by way of cross examination of Mrs. Nelson, and by evidence introduced in behalf of the state, it was proved that Mrs. Nelson testified both before the Board of Deputy State Supervisors of Elections of Crawford county, and before

the grand jury, but there was no proof introduced by the state that Mrs. Blake so testified.

But nothing was claimed by either Mrs. Blake or Mrs. Nelson before the case was submitted to the jury, for the immunity which they later claimed.

There being, as we have said, no step prescribed by way of procedure, as to either the time or method of claiming the benefit provided by the statute, we are of opinion, and so hold, that the bar may be claimed where such facts are shown to exist as stipulated by counsel in this case, at any time before sentence has been pronounced.

Whether it could be claimed after sentence is not a question here. But see **5 C. C. 276, 281,** and cases there cited.

For error in overruling the demand of defendants to be released because of the bar of the statute, the judgment of sentence and for costs will be reversed at costs of defendant in error, and plaintiffs in error are discharged.

Upon the record, we find no other error to the prejudice of plaintiffs in error.

Before Judges Pendleton, Justice and Crow.